1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:11-cr-0134 JAM KJN

12              Respondent,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   JOSE MARIO MEDRANO,

15              Movant.

16

17   I.  Introduction

18        Movant is a federal prisoner, proceeding through counsel, with a motion to vacate, set

19   aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2014

20   convictions for conspiracy to knowingly and intentionally distribute over 500 grams of

21   methamphetamine (21 U.S.C. § 846, 841 (a)(1) [count one]) and use of a communication facility

22   to facilitate drug trafficking (21 U.S.C. § 843 (b) [count six]).  He is serving a total sentence of

23   262 months.

24        As stated in the motion filed June 20, 2016, movant challenges his convictions on the

25   following grounds: (1) ineffective assistance of trial counsel concerning pre-plea proceedings; (2)

26   ineffective assistance of counsel at change of plea hearing; (3) ineffective assistance of counsel

27   during sentencing proceedings; and (4) ineffective assistance of Spanish language interpreter.  For

28   the reasons stated herein, the undersigned recommends that movant's motion be denied.

                                        1

## II. Factual Background[1]

The following information was obtained from a review of the investigative materials provided by the United States Attorney's Office. Due to the voluminous discovery in this case and the extended period of investigation, the information below is a general summary and background of the offense.

This case was investigated by the Sacramento County Sheriff's Department (SSD) and the United States Department of Justice Drug Enforcement Administration (DEA).

In April 2007, the Sacramento Area Intelligence Narcotics Task Force (SAINT) identified Jose Alfredo Garcia-Guillen, aka Gato, as a distributer of methamphetamine operating out of Sacramento, California. As a result, the Sacramento DEA and other agencies began an investigation into Gato and his drug trafficking organizations, known as the Gato DTO. It was learned that the Gato DTO was capable of distributing in excess of 40 pounds of methamphetamine per month. The DOT obtained methamphetamine from several different sources located throughout California, and all appeared to take direction from bosses in Mexico. It was further learned the Gato DTO would ship firearms and United States currency to one of the bosses in Mexico. The Gato DTO was responsible for distributing methamphetamine throughout California, into Reno, Nevada, and Chicago, Illinois.

The investigation revealed 20 suspects divided among the three drug trafficking organizations (DTOs): The Gato DTO; the Guerrero DTO, operating out of San Jose, California; and the Alvarado DTO, operating out of Stockton, California. The Guerrero DTO was s source of supply of methamphetamine for the Gato DTO. Juan Rodolfo Lopez Alvarado was identified as the leader of the Alvarado DTO and another source of supply for the Gato DTO. …

The Gato DTO's members were: 1) Jose Alfredo Garcia-Guillen (aka Gato), the head of the Gato DTO; 2) Estanislao Garcia, Gato's brother and a leader within the Gato TO; 3) Luis Garcia, a trusted member of the Gato DTO that was in charge of distributing methamphetamine for the organization; 4) Karla Miranda Perez, Gato's girlfriend, who was arrested on March 23, 212, with 12 pounds of methamphetamine; 5) Michael Caspillo, a sub-dealer and transporter for the Gato DTO; 6) Jose Mario Medrano, a sub-dealer and transporter for the Gato DTO; ….

………………………………………………………………

As to Jose Mario Medrano

Law enforcement authorities identified Jose Mario Medrano as a co-conspirator in the distribution of methamphetamine with

---

[1] The facts are taken from the Presentence Report filed February 4, 2014. (ECF No. 191.)

Jose Alfredo Garcia-Guillen (aka Gato). Authorities conducted numerous surveillances of Medrano at Garcia-Guillen's residence in Sacramento, and Medrano was suspected of residing there. Medrano was also observed meeting with Garcia-Guillen and other suspected drug traffickers, with numerous phone calls between Guerrero-Guillen and Medrano.

On March 22, 2010, Garcia-Guillen and Medrano discussed methamphetamine during a long, detailed call.

On September 28, 2010, authorities determined that a member of the Gato DOT was headed to Southern California to pick up a load of methamphetamine from the Alvarado DTO. Medrano was identified as the transporter. Officers with the California Highway Patrol (CHP) and the SSD conducted a traffic stop and arrested Medrano and Raeanna Zebley, who was the driver of the vehicle. Zebley's 8-year-old daughter was also inside the vehicle. Medrano was on a searchable probation and had a felony warrant. A search of the vehicle revealed 6.92 kilograms of methamphetamine (actual) within two hidden compartments in the vehicle. A loaded Browning 9mm automatic handgun was also located in one of the hidden compartments.

Subsequent to Medrano's arrest, a probation search was conducted at a home in Sacramento in which he rented a room. The search revealed 4.5 pounds of methamphetamine, $20,960 cash, four firearms, ammunition, four ballistic vests, pay-owe sheets, packaging materials, scales, and a money counter. These items were found in several different rooms, closets, and other locations throughout the residence.

(ECF No. 191 at 6-7.)

III. Legal Standards

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice …." Davis v. United States, 417 U.S. 333, 346 (1974) (quoting Hill v. United States, 368 U.S. 424, 429 (1962)).

////

3

IV. Discussion

*Preliminary Consideration*

For purposes of clarity, movant filed the underlying motion pro se.  (ECF No. 282.)  On November 22, 2016, the undersigned issued an order appointing the federal defender to represent movant.  (ECF No. 292.)  On November 28, 2016, an order regarding substitution of attorneys, wherein attorney Michael Bigelow was substituted as movant's counsel after the federal defender declared a conflict, was executed.  (ECF No. 294.)  The government then filed its opposition to movant's motion (ECF No. 316), and movant, represented by counsel, filed a traverse in reply (ECF No 337).  The undersigned's references to movant's arguments or contentions may be to those asserted in the original (unrepresented) motion, those asserted in the traverse (represented), or both.

*Waiver*

The government complains that movant has waived his right to present certain pre-plea challenges because he waived his rights by pleading guilty to counts one and six.

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process."  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  When a criminal defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 771 (1970)]."  Tollett, 411 U.S. at 267.  Generally, then, a habeas petitioner who has pled guilty or no contest can challenge only the voluntary and intelligent nature of the plea by showing that the advice he received from counsel was constitutionally ineffective.  Id., at 266-67; United States v. Broce, 488 U.S. 563, 569 (1989); Hill v. Lockhart, 474 U.S. 52, 56 (1985); McMann v. Richardson, 397 U.S. at 771; Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985).

In this case, liberally construing the original motion (Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), leads the undersigned to construe movant's pre-plea claims to challenge the voluntary and intelligent nature of his guilty pleas.  As

4

a result, those claims are not barred from review.

*Voluntariness of Plea*

Movant generally challenges the voluntariness of his guilty pleas.

"A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006). To determine the voluntariness of a plea, the court must "look to the totality of the circumstances, examining both the defendant's 'subjective state of mind' and the 'constitutional acceptability of the external forces inducing the guilty plea.'" Doe v. Woodford, 508 F.3d 563, 570 (9th Cir. 2007) (quoting Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986)).

Here, during the colloquy at the change of plea hearing, movant was advised that the maximum potential sentence was life in prison (ECF No. 217 at 7:21) and he acknowledged the following: that he understood the elements involved in the crimes to which he was pleading guilty (id. at 11:1-20); that he understood he was giving up certain constitutional rights identified by the court by pleading guilty (id. at 10:3-18); that he discussed with his attorney how the United States Sentencing Guidelines (USSG) and sentencing laws might apply to his case (id. at 8:12-22); that the sentence imposed may differ from any estimate he had discussed with his attorney (id. at 9:3-16); that in some instances the court could impose a sentence greater than or less than the sentencing guidelines (id. at 9:17-22); that he agreed with the factual bases orally represented in the proceeding (id. at 11:21-13:10); that he understood his plea might affect his immigration status (id. at 6:10-21); and that he was satisfied with his counsel's representation (id. at 6:1-4). The court concluded that the plea was knowing and voluntary. (Id. at 14:2-9.)

"Findings made by the judge accepting the plea 'constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity'" Doe, 508 F.3d at 571 (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Therefore, movant's statements at his plea hearing "properly constitute an 'imposing' barrier to collateral attack." Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986).

Movant cannot overcome the "strong presumption of verity" the undersigned must accord to the statements made to and acknowledged by movant during his plea hearing: nothing in the

plea colloquy indicates his pleas were involuntary or unknowing.  Given the circumstances, the undersigned finds movant's plea was voluntary and knowing.  <u>Doe</u>, 508 F.3d at 570.  Nevertheless, the undersigned will address movant's specific allegations that counsel provided ineffective assistance of counsel.

*Ineffective Assistance of Trial Counsel – The Applicable Standard*

The Sixth Amendment standard for analyzing an ineffective assistance of counsel claim is well established.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88, 694 (1984).

Under the first prong of the <u>Strickland</u> test, a petitioner must show that counsel's conduct failed to meet an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 687.  There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689).  A petitioner must rebut this presumption by demonstrating that his counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy."  <u>Strickland</u>, 466 U.S. at 688–89.  Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at the time it occurred, without the benefit of hindsight.  <u>Id</u>. at 689.

The second prong of the <u>Strickland</u> test requires a petitioner to show that counsel's conduct prejudiced him.  <u>Strickland</u>, 466 U.S. at 691–92.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.  A reasonable probability is one "'sufficient to undermine confidence in the outcome.'"  <u>Summerlin v. Schriro</u>, 427 F.3d 623, 640 (9th Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 693).  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"  <u>Richter</u>, 562 U.S.

6

at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id. And more particularly in a case involving an ineffective assistance of counsel claim allegedly resulting in a plea of guilty, movant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Lockhart v. Hill, 474 U.S. at 59.

*Ineffective Assistance of Trial Counsel – Pre-Plea Allegations*

Movant claims counsel provided ineffective assistance of counsel prior to his pleas of guilty as addressed below.

Failure to Investigate & Failure to Challenge Indictment

Movant complains that "[t]he record and court files of this case proves counsel failed to conduct adequate pre trial investigations." (ECF No. 282 at 9.) More specifically, he contends counsel should have "assure[d] the prosecution produced finger-print" and "voice recognition" analyses and failed to "assure[d] the prosecution adequately presented the charge(s) in the indictment." (Id. at 10.)

First, because the government is not *required* to submit illegal narcotics or weapons to fingerprint analysis, or recordings to voice recognition analysis, defense counsel cannot be faulted for failing to "assure the prosecution produced" such testing.

Further, it is mere speculation to assert that had counsel had the weapons analyzed for fingerprints, or the recorded telephone conversations subjected to voice recognition analysis, that movant would have been able to argue those findings to his advantage. (ECF No. 337 at 15-16.) As explained below, actual possession of the weapon by movant was not required to enhance his sentence. With regard to the phone calls, the PSR indicates "numerous phone calls between Garcia-Guillen and movant" were had, and that in particular, on March 22, 2010, the two "discussed methamphetamine during a long, detailed call." (ECF No. 191 at 7.) During sentencing proceedings, the government indicated that wiretaps also indicated movant was "working to obtain a 50-caliber rifle for use in Mexico" (ECF No. 220 at 13) and additional calls between movant and Garcia-Guillen, Gato DTO's leader, as movant was released from state custody were possible (id. at 14 ["I think there were some calls, some jail calls between the

defendant and Garcia Guillen on his way out of custody in that case, if I recall correctly"]).

It is entirely possible that following his investigation and review of the discovery in this matter, counsel for movant strategically opted not to seek a voice recognition analysis where doing so may have meant the government might elect to amend the indictment to charge something more against movant on the basis of another call, one of dozens if not hundreds obtained during the course of the investigation. Counsel received three discs containing the phone calls recorded during the investigation as a part of the government's discovery; it is reasonable to assume he may even have recognized his client's voice on some of those calls. Counsel's performance in any event was not unreasonable. Strickland, 466 U.S. at 688-89. Furthermore, counsel is not required to file frivolous motions on behalf of his or her client. See Tollett v. Henderson, 411 U.S. at 267 (counsel is under no obligation to make frivolous motions or advise a defendant of every conceivable constitutional attack he might mount). And, "[l]itigation tactics are decisions generally left to defense counsel." United States v. Smith, 282 F.3d 758, 763 (9th Cir. 2002). The record reveals that defense counsel investigated (discussed in greater detail below) and made reasonable tactical decisions based upon that investigation. Movant is not entitled to relief. Davis v. United States, 417 U.S. at 346.

Movant also claims counsel was ineffective for failing to challenge the indictment: "to assure the prosecution adequately presented the charge(s)" and "to make sure the alleged co-defendant(s) were all equally charged, and sentenced …." (ECF No. 282 at 10.)

There was no basis upon which to challenge the sufficiency of the indictment here. In count one of the indictment, movant was alleged to have conspired with others to distribute methamphetamine. Specifically, he was alleged to have violated 21 U.S.C. §§ 846 and 841(a)(1). Title 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 841(a)(1) states, in relevant part, "it shall be unlawful for any person knowingly or intentionally-- … to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

8

Movant's argument fails because possession of a firearm is not an element of any of the offenses to which he pled guilty. Therefore, it need not be alleged in the indictment. "An indictment must set forth each element of the crime that it charges. [Citation.] But it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998). See, e.g., Mathis v. United States, 136 S.Ct. 2243, 2248 (2016) ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' Black's Law Dictionary 634 (10th ed. 2014). At a trial, the elements are what the jury must find beyond a reasonable doubt to convict the defendant [citation]; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty [citation]. Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements. (We have sometimes called them 'brute facts' when distinguishing them from elements. [Citation.].) They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence': In particular, they need neither be found by a jury nor admitted by a defendant. Black's Law Dictionary 709").

In the traverse, movant claims counsel was ineffective for failing to challenge the indictment and for failing to "move to preclude the government's argument that the weapon … found in the vehicle was movant's before advising him regarding entering into an open plea of guilty." (ECF No. 337 at 11.) Additionally, he broadly complains his plea was "involuntary and unintelligent" because he "received nothing in exchange for his plea." (Id. at 11.)

Movant's claims are unavailing. If, as movant asserts, "it is impossible to conclude that trial counsel consciously chose not to file a motion to challeng[e] the indictment," then likewise, movant cannot properly presume counsel failed to research, prepare for or litigate the issue. It is mere speculation on movant's part to claim counsel had no basis for that decision. Judicial review of an attorney's performance under Strickland must ordinarily be "highly deferential" and incorporate a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy." United States v. Span, 75 F.3d 1383, 1387 (9th Cir. 1996). Movant's speculation does not operate to overcome Strickland's strong presumption.

Speculation continues where movant contends that had a motion been presented, "it would have established then that the government's argument was overstated and relied on pure unadulterated speculation. Had the motion been made pre-plea it could not have but provided some benefit to movant." (ECF No. 337 at 12.) Movant provides no record citation whatsoever to support his assertion that "the government's argument was overstated" or that it "relied on pure unadulterated speculation." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Other than his bald assertion, there is no basis to believe the government's position that movant constructively possessed a weapon was "overstated" or "unadulterated."

As to defense counsel's efforts, Mr. Scoble was appointed on April 21, 2011, upon movant's arraignment on the charges alleged in the indictment. (ECF No. 36.) In a June 2011 stipulation to continue a status conference to which counsel for movant agreed (and in several stipulations subsequent thereto), it was noted there were "5,000 pages of discovery as well as three discs of recorded phone calls" provided by the government. (ECF No. 53 at 2; see also ECF Nos. 59, 62, 64, 67 & 69 [same].) In July 2012, Mr. Scoble thereafter sought to continue the status conference, preparing a stipulation joined by multiple parties, wherein it was stipulated that the continuance would "allow defense counsel additional time to review discovery with the defendant, to examine possible defenses and to *continue* investigating the facts of the case" and that the "requested continuance was necessary to provide defense counsel reasonable time necessary for effective preparation …." (ECF Nos. 77 & 78 at 1-2, emphasis added.) Further, in another July 2012 stipulation to which counsel for movant agreed, it was additionally asserted that a continuance was necessary to "review the discovery; review investigation reports; discuss USSG calculations with defendants; and, review proposed plea agreements." (ECF No. 82 at 2.) The status conference was continued several more times on that same basis. (See ECF Nos. 94, 98, 101, 115, 121 & 129.) In a stipulation dated May 3, 2013, Mr. Scoble further asserted the following: "The reason for this continuance is to allow defense counsel additional time to review discovery with the defendant, to examine possible defenses and to *continue* investigating the facts of the case. Defendant Jose Medrano and his attorney have been in negotiations with the government and are close to reaching an agreement." (ECF No. 135 at 1-2; see also ECF No. 136

10

at 1, emphasis added.)

Thereafter, the district court conducted four status conferences prior to the entry of movant's guilty pleas of August 2013. (ECF Nos. 142, 144, 147 & 150.) More particularly, on May 14, 2013, the government's attorney noted a continuance was necessary because the "defendant needs time to look at a proposed Factual Basis which Mr. Scoble and I have been working on through last week." (ECF No. 214 at 3.) Mr. Scoble agreed with this assertion. (Id. at 4.) At the May 21, 2013, status conference, the following colloquy occurred:

> THE COURT: Status?
>
> MR. SCOBLE: Your Honor, we're very close to having the Factual Basis for an open plea worked out. I was optimistic we would have it done by today, and then my interpreter called out sick yesterday. I was not able to meet with Mr. Medrano. My suggestion is we come back in two weeks, which will be the 4th of June, for an anticipated change of plea.
>
> THE COURT: Who gave me this Factual Basis?
>
> MR. SCOBLE: I sent that, Your Honor.
>
> THE COURT: So what is wrong with it?
>
> MR. SCOBLE: Well, I discussed it with Mr. Medrano in, frankly, a fairly ugly mix of English and Spanish. I think we are close, Your Honor, but I do need to go over it with him with the Spanish interpreter.
>
> THE COURT: Okay. June 4th?
>
> MR. SCOBLE: Please, Your Honor.
>
> MR. BECKWITH: Yes, Your Honor.

(ECF No. 215 at 3-4.) At the change of plea hearing, the government asserted, and movant agreed following review of the evidence provided by the government, that there existed a factual basis for his plea to counts one and six. (ECF No. 217 at 11-12.)

The foregoing establishes that movant's assertions that counsel was ineffective for failing to conduct an adequate investigation and/or to consider defenses to the government's discovery – which would include any challenge to the indictment - prior to entering movant's plea are nothing more than bald assertions. The record reveals counsel investigated, researched the issues and discussed them with his client. Hence, counsel's performance was not unreasonable, and movant

11

has failed to meet his heavy burden. <u>Strickland</u>, 466 U.S. at 688-89; <u>Richter</u>, 562 U.S. at 104. Additionally, movant has not demonstrated prejudice. He has made no showing whatsoever that, but for counsel's alleged errors, he would not have pled guilty and instead would have proceeded to trial. <u>Hill v. Lockhart</u>, 474 U.S. at 59.

*Ineffective Assistance of Counsel – Change of Plea Proceedings*

Here, movant broadly complains that counsel provided ineffective assistance because he failed "to assure the petitioner understood what he was pleading guilty to." Movant also broadly complains he "cannot understand, read, write, nor speak English," before specifically arguing that counsel: (a) failed to inform him that "the charge(s) in his indictment never charged 21 U.S.C. § 841(b)(1)'s penalty provisions, which would enable the District Court to sentence below the mandatory minimum" as occurred when it sentenced "alleged co-defendant's to 70, and 80 months …;" (b) failed to inform movant he "had the right to be sentenced only on the charges in the indictment, and that by pleading guilty, the District Court will unconstitutionally enhance" the sentence "for firearms and other element(s) never charged by indictment;" and (c) failed to inform movant "that structural errors occur when a District Court adds element(s) of an offense," allowing for a sentence enhancement of 262 months. (ECF No. 282 at 11-12.) The government replies that movant has failed to substantiate his allegations by citing to facts, and that, in any event, counsel performed effectively, noting too that movant was assisted by a federally sworn interpreter. (ECF No. 316 at 16-17.)

A review of the record establishes that counsel did not provide ineffective assistance of counsel, despite movant's self-serving statements to the contrary.

First, as noted above, the record includes numerous references to defense counsel's efforts to explain the plea to movant prior to entry of the guilty pleas. (See ECF Nos. 82, 94, 98, 101, 115, 121, 129 [continuance granted to allow for discussion of "USSG calculations with defendants" and to "review proposed plea agreements"].) In early May 2013, counsel for movant declared: "Defendant Jose Medrano and his attorney have been in negotiations with the government and are close to reaching an agreement." (ECF No. 135 at 1-2; ECF No. 136 at 1.) A few weeks later, counsel for the government noted the need for a continuance because

"defendant needs time to look at a proposed Factual Basis" that he and defense counsel had been working on; defense counsel agreed with the government's position. (ECF No. 214 at 3.) When the court conducted a status conference on May 21, 2013, defense counsel asked for additional time because he was unable to meet with movant to discuss the plea due to an interpreter calling in sick, noting that he needed "to go over it with him with the Spanish interpreter." (ECF No. 215 at 3-4.) Movant was present during the status conferences and was assisted by an interpreter. Had he felt counsel's various assertions were false, movant could have objected in some manner. Yet the record is silent.

Second, a review of the change plea hearing transcript confirms the government's position that "counsel, as well as the court, took great effort to ensure that Medrano understood the charges to which he was pleading guilty, as well as the sentencing process and potential penalties." (ECF No. 316 at 17.) Movant affirmed he was satisfied with counsel's representation and advice. (ECF No. 217 at 6.) The maximum penalties for each count were noted on the record, to wit: life in prison for count one and four years for count six. (ECF No. 217 at 7-8.) Immediately thereafter, the following colloquy occurred:

> [THE COURT]: There are advisory sentencing guidelines and there's statutory sentencing factors that I have to consider in determining what sentence you're going to receive in this case.
>
> Have you had enough time to discuss with your lawyer how the sentencing guidelines and the statutory sentencing factors might apply to your case?
>
> Have you had enough time to discuss that with your lawyer?
>
> THE DEFENDANT: Yes.

(ECF No. 217 at 8.) Defense counsel was then asked whether he believed his client understood "how the guidelines and statutory sentencing factors might apply to his case" (id. at 8) and defense counsel replied, "We have discussed it at great length, Your Honor. I believe he very well understands it." (Id. at 9.) The court then cautioned movant as follows:

> THE COURT: Mr. Medrano, I'm not able to determine what sentence you're going to receive until I've had a chance to review a presentence report from probation. I also have to look at these guidelines and statutory sentencing factors, and then any other information that's given to me, as well as you get a chance to speak,

13

and your attorney and the Government's attorney get a chance to speak at your sentencing hearing. If the Government or Probation make a recommendation as to what sentence you should receive, that sentence is not binding, or that recommendation is not binding on this Court. And if I don't accept that recommendation, you're still going to be bound by your guilty plea, and you will have no right to withdraw it. Do you understand that?

(ECF No. 217 at 9.)  Movant responded affirmatively.  (Id. at 9.)  The court went on to acknowledge movant's "reserving [his] right to appeal" (id. at 10) before enumerating the constitutional rights movant was waiving by his plea (id. at 10), reciting the elements of the crimes (id. at 11) and factual bases for each count (id. at 12-13), before accepting movant's guilty pleas (id. at 13-14).  At no time, despite being expressly advised he could do so (ECF No. 217 at 5), did movant interrupt and ask for clarification of anything stated or discussed.

In the traverse, movant contends counsel was ineffective for failing to object to "the deficient plea colloquy at which no mention was made that his sentence could be enhanced by the weapon allegation …." (ECF No. 337 at 21-22.)  The plea colloquy was not defective in any way.  Movant was advised, pursuant to Federal Rules of Criminal Procedure Rule 11, that he faced a maximum penalty of life in prison pursuant to the offense charged in count one.  (ECF No. 217 at 7 ["On Count 1, under the maximum penalties. These are the maximum penalties for these crimes, Mr. Medrano.  [¶]  On Count 1, the conspiracy charge, the maximum sentence provided by law is life in prison, and/or a $10 million fine, a supervised release term of from five years to life, and a $100 special assessment.  That count also carries a 10-year mandatory minimum sentence"]; 21 U.S.C. § 841(b)(1)(A)(viii) ["such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"].)  He was advised the court would make its own determination regarding the applicability of the guidelines and sentencing factors, and that any recommendation regarding sentence as not binding on the court.  (Id. at 9.)  These advisements were sufficient.  United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000); United States v. Wills, 881 F.2d 823, 825 (9th Cir. 1989); Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988).

Simply put, counsel did not perform deficiently; he performed reasonably under prevailing professional norms. Strickland, 466 U.S. at 688-89. Neither has movant demonstrated prejudice. There is no reasonable probability that had defense counsel challenged the plea colloquy as defective, the result of the proceeding would have been different. Hill v. Lockhart, 474 U.S.at 59. Movant is not entitled to relief. Davis v. United States, 417 U.S. at 346.

*Ineffective Assistance of Counsel – Sentencing Proceedings*

In his grounds three and five, movant complains defense counsel was ineffective for failing to object to the firearm enhancement and for failing to address the sentencing disparities between he and his co-defendants. (ECF No. 282 at 12-13, 15-17.)[2] The government responds that defense counsel did in fact object to the firearm enhancement, as well as raise the issue of sentencing disparities with the court, thus negating movant's claims of ineffective assistance of counsel. (ECF No. 316 at 18-20.) In his traverse, movant asserts counsel was ineffective for "failing to object to the deficient plea colloquy at which no mention was made that his sentence could be enhanced by the weapon allegation" (ECF No. 337 at 21) and that counsel "failed to effectively object to the PSR, sentencing enhancements and [movant's] very disparate sentence," claiming counsel "did little more than pay lip service to the facts" of the case (id. at 22-24.)

Movant's assertion that "trial counsel offered not a single persuasive argument to refute the gross speculation [regarding possession of the gun] offered by the government" (ECF No. 337 at 14) ignores the record in this case. In a sentencing memorandum filed March 24, 2014, counsel argued "[t]he evidence as set forth in the PSR" was "insufficient to support application" of the § 2D1.1(b)(1) enhancement. (ECF No. 198 at 2-4.) More particularly, counsel asserted there was "nothing in the PSR, and nothing in discovery, to indicate" movant "knew of the gun's

_____

[2] In his pro se motion, movant often duplicates or repeats his claims and the bases for those claims. However, these findings will address each basis for an ineffective assistance of counsel claim once. To the degree the court finds that basis not persuasive, these findings are continuing in nature and will not be repeated.

presence in a hidden compartment in a vehicle that did not belong to him." (Id. at 3.) Counsel

contended there was an insufficient evidence of constructive possession or the exercise of

dominion and control and cited Ninth Circuit legal authority for his positions. (Id. at 3.) The

government opposed movant's position on the issue in their memorandum of April 3, 2014.

(ECF No. 199 at 2-3.)

At the sentencing hearing of April 8, 2014, counsel submitted the issue on the memoranda

(ECF No. 220 at 6) and the district court ruled as follows:

> [THE COURT]: The court will overrule the objection for the
> reasons set forth in the government's sentencing memorandum.

> As the government argues, which the Court found to be persuasive,
> given the defendant's close connection to a major drug trafficking
> organization and one of its leaders, and the fact that he was
> transporting methamphetamine in a special car with two hidden
> compartments, one of which had drugs and one of which had drugs
> and the gun, there is a sufficient nexus for the Court to apply the
> enhancement. The circumstances surrounding the seizure of the
> nine-millimeter pistol in this case indicate that the defendant knew
> of the weapon and had the power and intention to control it.
> Ninth Circuit model criminal jury instruction 3.17 provides:

> A person has possession of something if the person knows of its
> presence and has physical control of it; or knows of its presence and
> has the power and intention to control it. More than one person can
> be in possession of something if each knows of its presence and has
> the power and intention to control it.

> Additionally, under Sentencing Guideline 1B1.3(a)(1)(B):

> In the case of a jointly undertaken criminal activity, the applicable
> specific offense characteristics shall be determined on the basis of
> all reasonably foreseeable acts of the defendant's co-conspirators
> made in furtherance of the jointly undertaken criminal activity. The
> government's burden at sentencing is mere preponderance of the
> evidence. That's the United States versus Ortiz.

> As quoted by the government in its brief, in that case, the Ninth
> Circuit held that it does not matter that the defendant Ortiz was not
> personally present when the firearm was used so long as its use was
> reasonably foreseeable and furthered the jointly undertaken
> criminal activity.

> The district court found this was so and could properly increase
> Ortiz's offense level for his co-defendant Ramos's possession of the

16

firearm. The government is not required to establish that the defendant had actual knowledge of the guns. Rather, the touchstone is foreseeability citing United States versus Hoskins, a Ninth Circuit case, and Alvarez Valenzuela, another Ninth Circuit case.

The Ninth Circuit has long held that guns are foreseeable in drug crimes because the drug industry is a dangerous, violent business. That's United States versus Johnson, a 1989 Ninth Circuit case. The Ninth Circuit and other courts have long recognized the nexus between drugs and firearms. That's United States versus Castaneda and United States versus Chairez, C-H-A-I-R-E-Z. Chairez is a Seventh Circuit case. Castaneda is a Ninth Circuit case.

For those reasons, the Court overrules the objection and finds the two-level enhancement to be appropriate.

(ECF No. 220 at 6-9.)

In <u>United States v. Ortiz</u>, 362 F.3d 1274 (9th Cir. 2004), the defendant was indicted for "conspiracy to distribute methamphetamine, drug possession-distribution, and misprision of felony, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)." <u>Id</u>. at 1276. Following conviction after jury trial, the district court adopted the findings of the PSR, adjusted Ortiz's offense level upward pursuant to "USSG § 3B1.1(a) for being an organizer or leader of criminal activity involving at least nine participants," and sentenced defendant to 360 months in prison. <u>Id</u>. at 1276. Ortiz argued on appeal that the district court improperly applied USSG § 2D1.1(b)(1) to increase his offense level where a co-conspirator displayed a firearm during a drug delivery. The Ninth Circuit held that it did "not matter that Ortiz was not personally present when the firearm was used, so long as its use was reasonably foreseeable and furthered jointly undertaken criminal activity." <u>Id</u>. at 1278.

Applying the requirements of reasonable foreseeability and furthering jointly undertaken criminal activity to the facts in this case, the undersigned finds no error. Movant was directly linked to the transportation of methamphetamine on the occasion wherein the loaded firearm was found in the altered vehicle driven by his girlfriend. As the result of a years-long investigation into the Gato DTO, authorities learned in September 2010 that a member of the Gato DTO was

17

headed to Southern California to pick up a load of methamphetamine from the Alvarado DTO. Movant was identified as that transporter. Thereafter, on September 28, 2010, authorities conducted a traffic stop wherein a search of the vehicle in which movant was a passenger revealed 6.92 kilograms of methamphetamine and a loaded 9mm handgun in two hidden compartments. A later search of a home wherein movant rented a room revealed 4.5 pounds of methamphetamine, more than $20,000 in cash, firearms, ammunition and other evidence of drug trafficking, although the court did not rely upon the firearms found in that search for its findings. Movant knowingly participated in a large-scale drug conspiracy with ties to Mexico. He had regular contact with the head of the Gato DTO, Jose Alfredo Garcia-Guillen, and was known to be a "sub-dealer and transporter for the Gato DTO." Here, it is reasonably foreseeable that movant had knowledge of the loaded firearm found alongside the methamphetamine he was known to be transporting from Southern California to Sacramento as a sub-dealer and transporter for the Gato DTO. There is thus "a sufficient connection between the defendant and the contraband to support the inference" that movant had constructive possession of the gun. See United States v. Disla, 805 F.2d 1340, 1350 (9th Cir. 1986); United States v. Cousins, 427 F.2d 382, 384 (9th Cir. 1970) ("The circumstances of each case must be examined to determine if there is 'such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion ad control as if it were actual possession.' [Citation.]").

Movant was a significant player in the Gato DTO. He had regular contact with others in the organization, including its leader, and was a known sub-dealer and transporter. The organization was the subject of a years-long investigation by the Drug Enforcement Administration and other local authorities. For those reasons, this case is distinguishable from United States v. Kelso, upon which movant relies. In Kelso, on the occasion of his arrest Kelso advised investigators that he had "agreed to provide a buyer for the drugs and to accompany [co-

18

defendant] Muro-Torres to the sale, in exchange for return of title to his truck which, [he claimed], was transferred to Muro-Torres while [Kelso] was incarcerated;" he admitted knowledge of the drugs but "steadfastly denied knowledge of the weapon." United States v. Kelso, 942 F.2d 680, 681 (9th Cir. 1991). Nothing indicates Kelso was a regular sub-dealer or transporter for a drug trafficking organization. The facts in Kelso are readily distinguishable from the facts in this case.

In sum, defense counsel did not perform deficiently at sentencing. Strickland, 466 U.S. at 688-89. Further, movant cannot prevail on his claim for he has not demonstrated prejudice. Id. at 690-94.

The record clearly reveals counsel raised the issue of the propriety of applying the firearm enhancement several times: in his informal objections to the PSR (ECF No. 179-1), in his sentencing memorandum (ECF No. 198 at 2-4), and during the sentencing hearing (ECF No. 220 at 4). Plainly then, counsel cannot be said to have performed deficiently as originally argued by movant where he did in fact object to the firearm enhancement. In his traverse, movant complains that counsel did not *effectively object* to the enhancement, broadly asserting defense counsel "did little more than pay lip service to the facts." The undersigned disagrees. Simply because counsel was not successful in persuading the court to his position does not make him ineffective. The record supports a finding that counsel did not perform deficiently, nor did movant suffer prejudice as a result of any deficiency. Strickland, 466 U.S. at 688-94. This record also clearly reveals counsel raised the issue of disparate sentences as between movant and his co-defendants: in his informal objections to the PSR (ECF No. 179-1) and in his sentencing memorandum (ECF No. 198 at 4-5). When the issue arose during the sentencing hearing, the district court addressed its concerns to the government after acknowledging, and obviously giving some credence to, defense counsel's argument concerning sentence disparities:

THE COURT: And you focus on this in your brief, and I wanted to come back to that. Mr. Scoble has asked for 144 months. That's a huge difference between the two of you. And the biggest concern I have, in looking at the 3553 factors, is this – as you address it briefly, this disparity issue. Because there were a number of other defendants in this case. Not all of them have been sentenced so far. But Michael Caspillo got 60 months. Tulysewski got 85 months.

I think those are the only two I've sentenced, right?

MR. BECKWITH: That is correct, Your Honor.

THE COURT: So this is -- even if you look at the 85 months, the 262 is almost three, four -- three and a half times greater than any other defendant.

So I don't get a feel for -- I mean, you argue it's inappropriate to compare him to Caspillo, but is he one of the leaders? The presentence report doesn't give me a real feel for what you believe his role is. And how dangerous is he? He's likely to get deported, right?

MR. BECKWITH: He is, Your Honor.

THE COURT: So why impose a -- that would be twenty -- almost a 22-year sentence on someone who, at least his lawyer argues, is at the same level as this Caspillo guy? So what makes him different from Michael Caspillo? And is he that dangerous that he needs to spend 22 years in prison?

MR. BECKWITH: Your Honor, with regard to the danger, Your Honor, and 3553 factors in general, we think all of those factors actually support the guideline sentence in this case.

With regard to danger, the answer is yes. He's transporting, you know, high grade methamphetamine, large quantities of high grade methamphetamine in a car with a child and a firearm. Additionally, he's living in what amounts to be this organization's or this cell's arsenal. I mean, he's living amongst a number of weapons, including an SKS rifle, ammunition, body armor.

And as we look at the wiretaps in this case, we know there's a connection to Mexico and a larger organization. So we see -- what we see in Sacramento is a cell of this larger organization.

And Garcia Guillen, who we believe is currently in Mexico --

THE COURT: He's a fugitive, right?

MR. BECKWITH: Yes, sir.

THE COURT: You think he's at the top?

MR. BECKWITH: Well, we think he's the cell leader in Sacramento. The top of the organization is actually in Mexico.

| | |
|---|---|
| 1 | THE COURT: Alvarado? |
| 2 | MR. BECKWITH: Yes, Your Honor. |
| 3 | THE COURT: Lopez Alvarado? |
| 4 | MR. BECKWITH: Yes, Your Honor. |
| 5 | THE COURT: Okay. |
| 6 | MR. BECKWITH: And so -- |
| 7 | THE COURT: So where does he fit in, then? |
| 8 | MR. BECKWITH: Well, initially, Your Honor, there's a -- I would draw a line between -- if we look at -- if you look at page 2 of the |
| 9 | PSR, you'll have a listing of the defendants. |
| 10 | THE COURT: Right. |
| 11 | MR. BECKWITH: I would draw a line between – right above No. 5. And, let's see, where is Medrano? Medrano, he happens to be -- |
| 12 | Medrano actually should be above that line. |
| 13 | THE COURT: Medrano should be in the top five? |
| 14 | MR. BECKWITH: In the top five, Your Honor. |
| 15 | If you look at Mr. Caspillo, Mr. Tulysewski, first and foremost, a 5K is not at issue in this case as it was in both of those cases. |
| 16 | THE COURT: Right. |
| 17 | |
| 18 | MR. BECKWITH: But those men were both people who purchased drugs from this cell, from this organization on a regular basis in significant quantities. Caspillo was buying about a pound a day. |
| 19 | But Medrano was a member of that organization and a trusted member. … |
| 20 | |

(ECF No. 220 at 10-13.)  The prosecutor further identified the ways in which movant was

distinguished from others involved in the conspiracy (id. at 13-16), and when asked by the district

court whether he saw "262 [months] as, in any way, a concern in terms of 3553 sentencing

disparities," the prosecutor responded that he did not.  (Id. at 16.)

Defense counsel responded to the government's position at the hearing:

| | |
|---|---|
| 26 | THE COURT: Okay. So, Mr. Scoble, what justifies specifically the variance that you're asking for? |
| 27 | |
| 28 | MR. SCOBLE: A few things, Your Honor. Thank you. |

As an initial matter, clearly 144 months, 12 years is a very long time by any measure. It is far, far longer than Mr. Medrano has ever spent in custody previously. [¶]-[¶]. So 12 years is certainly a very long time. It's certainly long enough to vindicate the harm, protect the public, and give the government the lengthy sentence they're looking for.

As far as disparity, I think it's, to some degree – I appreciate the government's efforts to sort of rank these various defendants, but it's certainly not an exact process to say that this person in this very fluid drug trafficking organization is more culpable than this person.

And, you know, to say that Mr. Medrano is so much more dangerous than Mr. Caspillo, for example, that he merits a sentence more than three and a half times greater, I just don't think it's a leap that can be fairly made if, according to the government -- as according to the government Caspillo was purchasing a pound of methamphetamine a day to deal on the street level.

That's very dangerous conduct. If he is distributing to individual users, there's a great deal of opportunity for violence, damage to society, damage to families. And to say that Mr. Medrano's conduct merits a sentence three and a half times greater than Mr. Caspillo's I think is erroneous.

There is certainly a lot of conduct by – attributed to Mr. Medrano that one could say is dangerous. But in point of fact, it's not violent per se. There's no evidence of him physically possessing a weapon.

And I understand the Court's ruling regarding the possession of a weapon enhancement. But factually there's no evidence that he physically had a weapon on his person. Nor is there any evidence of him brandishing it, using one. And there's no evidence in his criminal history of violent behavior.

So while certainly the drug trade is a dangerous and violent industry, there is nothing to say that Mr. Medrano, as an individual, is a violent individual. Yes, he was around weapons. There were weapons in the house that, as the Court rightly observes, he was just renting a room. But there's, again, no evidence of him actually using or brandishing a weapon.

(ECF No. 220 at 19-21.)  Ultimately, the district court was persuaded by those facts that

distinguished movant from co-defendant Caspillo and Tulysewski:

[THE COURT]: In looking at the 3553(a) factors, the Court is, as I've indicated, concerned primarily about the disparity factor. As Mr. Scoble points out, this would be a sentence that is more than three times greater than any other sentence that I've handed out

> among the defendants that have entered pleas and have been sentenced. But I don't believe, given the facts of this case, that that concern, as probation also argues and the government argues, is sufficient to vary from a guide -- a within guideline sentence.
>
> Mr. Medrano is, at least among the defendants I've sentenced, somewhat -- not somewhat, but he is unique. He has more responsibility.

(ECF No. 220 at 26.)  Simply put, movant's assertion of his "narrow participation in the offense" is not supported by this record. Given defense counsel's efforts as described above, the undersigned finds counsel performed reasonably and within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 688-89.  And, even assuming a deficiency, movant has not demonstrated prejudice.  Movant has not shown there is a reasonable probability that had defense counsel done more at the sentencing hearing to challenge the PSR and/or the court's application of the firearm enhancement that the result of the proceeding would have been different.  Id. at 690-94.

*Ineffective Assistance – Court Interpreter*

In this claim, movant asserts a violation of the Court Interpreter's Act, 28 U.S.C. §§ 1827-1828 because he "never understood the charges in his indictment," "the interpreter failed to properly translate … he would receive sentencing enhancements on charges never presented in the indictment," and that "the interpreter failed to translate … that the District Court would enhance his sentence …."  (ECF No. 282 at 14-15.)

Regarding movant's broad claim of an inability to understand, read, write or speak English as that relates to his ineffective assistance of counsel claims or any other claim, the undersigned notes that movant was always assisted by a certified federal court interpreter.  (See ECF Nos. 36, 41, 60, 73, 142, 144, 147, 150, 158, 202, 213-215, 217, 220.)  See also United States v. Si, 333 F.3d 1041, 1043, n.3 (9th Cir. 2003) (the United States Supreme Court has not yet recognized a constitutional right to a court-appointed interpreter); United States v. Lim, 794 F.2d 469, 470-71 (9th Cir. 1986) (the Ninth Circuit has held that a defendant whose fluency in English is so severely impaired as to inhibit comprehension of the proceedings and/or interfere with the exercise of his constitutional rights has a constitutional right to an interpreter).

23

Additionally, defense counsel employed a Spanish language interpreter when communicating with movant. (See e.g., ECF No. 215 at 3.) At no time, however, did movant ever indicate any translation being provided was inaccurate, or object in any way whatsoever. Thus, the undersigned rejects movant's argument in this regard. See United States v. Lim, 794 F.2d at 471 (Ninth Circuit rejected a contention that the defendant's Sixth Amendment rights had been violated due to inadequate translation, noting the absence of any objection to translation).

Additionally, the undersigned notes that some federal courts have recognized a presumption of regularity in court interpreter official duty. See Michel v. United States, 849 F.Supp.2d 649, 656 (W.D. Virg. Mar. 28, 2012); Hou v. Walker, No. CV 96 1365, 1996 WL 684442, at *3 (E.D.N.Y. Nov. 20, 1996) (quoting People v. Bicet, 180 A.D.2d 692, 580 NY.S.2d 55, 56 (1992); Clervil v. McNeil, No. 08-20144-CIV, 2008 WL 4753575, at *12 (S.D.Fla. Oct. 28, 2008) (citing Hou, 1996 WL 684442, at *3). If the undersigned were to apply such a presumption here, the court would conclude Petitioner has failed to rebut the presumption regarding any interpreter who assisted movant, for he has failed to specifically identify any inaccuracy whatsoever. Broad assertions such as a failure "to properly translate documents, as well as the change of plea colloquy" (ECF No. 337 at 20) are insufficient. For that same reason, an evidentiary hearing (id. at 20-21) would be nothing more than an improper fishing expedition. Habeas petitioners may not "use federal discovery for fishing expeditions to investigate mere speculation." Calderon v. U.S. Dist. Court, 98 F.3d 1102, 1106 (9th Cir. 1996); see also, Kemp v. Ryan, 638 F.3d 1245, 1260 (9th Cir. 2011); Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999).

Movant's claim concerning any inadequacy by any court interpreter is wholly unsupported on this record and should be denied. Davis v. United States, 417 U.S. at 346. To the degree movant is complaining counsel was ineffective in some way related to the interpreter's translation, there is nothing in the record to indicate defense counsel was made aware of some allegation of inadequacy. Counsel cannot be ineffective where he had no knowledge of a problem. Hence, there is no deficient performance, and movant makes no showing of prejudice in this regard. Strickland, 466 U.S. at 688-694.

IT IS HEREBY RECOMMENDED that:

1.  Movant's June 20, 2016, motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2.  The Clerk of the Court be directed to close the companion civil case No. 2:16-cv-01384-JAM-KJN.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 31, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Medr0134.257

25